UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| MR. AND MRS. C., *as parents and* ) <br> *next friends of K.C., a minor,* ) <br> ) <br>        **Plaintiffs** ) <br> ) <br> v. ) <br> ) <br> **MAINE SCHOOL** ) <br> **ADMINISTRATIVE DISTRICT** ) <br> **NO. 6,** ) <br> ) <br>        **Defendant** ) | **Civil No. 06-198-P-H** |

**MEMORANDUM DECISION AND ORDER ADOPTING THE
RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

     The parents of K.C. and the Maine School Administrative District No. 6 both have objected to the Magistrate Judge's Recommended Findings of Fact and Conclusions of Law ("Recommended Decision") in this Individuals with Disabilities Education Act ("IDEA") case. After oral argument and *de novo* review, I conclude that the Magistrate Judge was exactly correct and adopt his Recommended Decision. I elaborate upon two issues: (1) whether later statutory amendments have altered the Rowley definition of a free appropriate public education ("FAPE"); and (2) whether there can be any remedy when a school violates the statutory "stay-put" requirement, but otherwise provides the student a FAPE. Like the Magistrate Judge, I conclude that the answer to the first question is "no" and the answer to the second question is "yes."

*(1)*     ***The Continuing Vitality of* Rowley**

As a condition on receiving federal funds, the IDEA requires states to provide a FAPE to students with disabilities. 20 U.S.C. § 1412(a)(1) (West 2000 & Supp. 2007). The statute defines FAPE:

> Special education and related services that—
> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

Id. § 1401(9).[1] This definition of FAPE originated in 1975 with the Education for All Handicapped Children Act ("EHA"), the statutory precursor to the IDEA. See Pub. L. No. 94-142, § 4, 89 Stat. 775 (1975). Despite extensive amendments since 1975, including major revisions that Congress made in enacting the IDEA in 1997 and the IDEA amendments in 2004,[2] Congress has never altered this definition.

Reasoning from the statutory definition, the Supreme Court in Board of Education v. Rowley established that a school district provides a FAPE "if personalized instruction is being provided with sufficient supportive services to permit the child to benefit from the instruction, and the other items on the definitional checklist are satisfied." 458 U.S. 176, 188–89 (1982). Rowley

---

[1] The Department of Education's regulatory definition is substantially similar. See 34 C.F.R. § 300.17 (2007).
[2] The 2004 amendments to the IDEA were enacted by the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647 (2004).

2

rejected the argument that a FAPE requires a school district to "maximize the potential of handicapped children." Id. at 188–90.  Instead, a FAPE requires that "the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." Id. at 200; Maine Sch. Admin. Dist. No. 35 v. Mr. R., 321 F.3d 9, 11–12 (1st Cir. 2003); Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1086 (1st Cir. 1993); Roland M. v. Concord Sch. Comm., 910 F.2d 983, 992 (1st Cir. 1990).[3]

Here, the Magistrate Judge applied Rowley to determine that the Amended 2006–07 individualized education plan implemented on April 10, 2006 ("Amended 2006–07 IEP") provided this student with a FAPE. Recommended Dec. at 40–49.  The parents object, arguing that the 1997 IDEA and particularly its 2004 amendments implicitly raised the standard for a FAPE beyond that articulated in Rowley.  Pls.' Objection to Recommended Dec., at 6–8 (Docket Item 36) ("Pls.' Objection").  They contend that the justification for the standard developed in Rowley lay in the then intent of the EHA "to open the door of public education to handicapped children on appropriate terms [rather] than to guarantee any particular level of education once inside." Rowley, 458 U.S. at 192.  They argue that the 2004 amendments to the IDEA increased the substantive goals for the education of disabled students (namely in the field of outcome-oriented academic and transition services) so that the goals now go beyond simply opening the door to public education.  See Pls.'

---

[3] The standard derived from Rowley differs somewhat across the circuits.  See Philip T.K. Daniel & Jill Meinhardt, Valuing the Education of Students with Disabilities: Has Government Legislation Caused a Reinterpretation of a Free Appropriate Public Education?, 222 Educ. L. Rep. 515 (2007) (explaining a circuit split based on whether the standard is "some educational benefit" or a "meaningful benefit").

3

Objection at 6. The parents derive support for this proposition from <u>J.L. v. Mercer Island Sch. Dist.</u>, No. C06-494P, 2006 WL 3628033 (W.D. Wash. Dec. 8, 2006), *corrected on reconsideration on other grounds*, 2007 WL 505450 (W.D. Wash. Feb. 10, 2007).[4] <u>Mercer Island</u> concluded that the 1997 IDEA introduced specific goals of self-sufficiency and independent living, and thus that the "educational benefit" required for a FAPE now must be measured relative to those goals. <u>Id</u>. at *4–6.

The First Circuit has already concluded that the <u>Rowley</u> standard is unaffected by the 1997 IDEA. See <u>Lessard v. Wilton-Lyndeborough Cooperative Sch. Dist.</u>, No. 07-1860, slip op. at 18–20 (1st Cir. Feb. 25, 2008); <u>Lt. T.B. v. Warwick Sch. Comm.</u>, 361 F.3d 80, 83 (1st Cir. 2004).[5] But the parents maintain that the 2004 IDEA amendments also have raised the standard established in <u>Rowley</u>. The First Circuit did not address the 2004 IDEA amendments in either <u>Warwick School Committee</u> or <u>Lessard</u>.[6]

The parents highlight the following language of the 2004 amendments:

> Almost 30 years of research and experience has demonstrated that the education of children with disabilities can be made more effective by—
> (A) having high expectations for such children and ensuring their access to the general education

---

[4] The case is currently on appeal to the United States Court of Appeals for the Ninth Circuit (No. 07-35716).

[5] <u>Warwick School Committee</u> was perhaps distinguishable; it rejected an argument that the 1997 IDEA requires a school district to provide the "maximum potential benefit" to a disabled child, 361 F.3d at 83, whereas <u>Mercer Island</u> concluded that the 1997 IDEA retains the <u>Rowley</u> standard of some educational benefit but adds more specific goals upon which to measure that benefit. 2006 WL 3628033, at *6. After oral argument in this case, however, the First Circuit reaffirmed <u>Rowley</u> and specifically found the reasoning in <u>Mercer Island</u> to be unconvincing. See <u>Lessard</u>, slip op. at 19 n.5.

[6] <u>Lessard</u> did reject the reasoning in <u>Mercer Island</u>, but the reasoning in <u>Mercer Island</u> was based principally upon the 1997 IDEA, not the 2004 amendments, 2006 WL 3628033, at *4.

> curriculum in the regular classroom, to the maximum extent possible, in order to—
>> (i) meet developmental goals and, to the maximum extent possible, the challenging expectations that have been established for all children; and
>> (ii) be prepared to lead productive and independent adult lives, to the maximum extent possible.

20 U.S.C. § 1400(c)(5).[7] But that commendable language did not alter the statutory definition of a FAPE in § 1401(9), which provided the foundation for the standard derived in Rowley.

Rowley has been prominent in EHA and IDEA cases for more than twenty-five years, and Congress has not explicitly articulated disagreement with it or amended the statutory definition of a FAPE. "Assuming, as [the First Circuit is] inclined to do, that Congress keeps itself apprised of developments in the federal courts," United States v. Dwinells, 508 F.3d 63, 69 (1st Cir. 2007), the failure to amend the statutory definition of FAPE weighs strongly

---

[7] During oral argument, the parents pointed specifically to 34 C.F.R. § 300.320(a)(4), a regulation implementing the 2004 IDEA amendments, as showing a substantial increase in the IDEA's focus on academic and transition services. This regulation is part of the definition of what must be included in an IEP and is identical to the statutory language currently in 20 U.S.C. § 1414(d)(1)(a)(i)(IV), which existed prior to the 2004 IDEA amendments, see 20 U.S.C. § 1414(d)(1)(A)(iii) (West 2000). 34 C.F.R. § 300.320(a)(4) states:
> A statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided to enable the child—
>> (i) To advance appropriately toward attaining the annual goals;
>> (ii) To be involved in and make progress in the general education curriculum in accordance with paragraph (a)(1) of this section, and to participate in extracurricular and other nonacademic activities; and
>> (iii) To be educated and participate with other children with disabilities and nondisabled children in the activities described in this section.

against finding a Congressional intent to alter the Rowley standard. Indeed, given the ubiquity of Rowley in the context of IDEA proceedings, one would expect Congress (or the Department of Education) to speak clearly if the intent were to supersede it. Cf. Bolden v. City of Topeka, 441 F.3d 1129, 1137 (10th Cir. 2006) ("Congress does not overrule recent Supreme Court precedent so subtly."). I conclude that the Rowley definition of free appropriate public education (FAPE) still survives.

### *(2)   Compensatory Education For A Stay-Put Violation*

The IDEA provides a variety of safeguards to ensure that students with disabilities and their parents have protections with respect to provision of a FAPE. One of the most important safeguards is the right of the parents to participate in development of the individualized education plan ("IEP") and to challenge a proposed IEP through administrative and judicial proceedings. See 20 U.S.C. § 1415; Sch. Comm. v. Dep't of Educ., 471 U.S. 359, 361 (1985) ("Burlington"). An integral part of the protection afforded by this process is the so-called "stay-put" provision, requiring the school not to change the student's educational placement until proceedings are complete. 20 U.S.C. § 1415(j); Honing v. Doe, 484 U.S. 305, 324–25 (1988).

The stay-put provision preserves the status quo as follows:

> Except as provided in subsection (k)(4) [which allows for an interim alternative placement as a disciplinary or emergency measure], during the pendency of any proceedings conducted pursuant to this section, unless the state or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j); Verhoeven v. Brunswick Sch. Comm., 207 F.3d 1, 3 (1st Cir. 1999). The stay-put placement may be changed only upon agreement of the school district and parents, or if the school district shows that it is "dangerous" for the student to remain in the current placement. 20 U.S.C. §§ 1415(j), (k); 34 C.F.R. §§ 300.518, 330.530–33 (2007). Here, the School District had no agreement with K.C.'s parents, and it has not asserted that the student was dangerous in his current placement.

Based on the differences between the prior placement and the Amended 2006–07 IEP—implemented without the approval of K.C.'s parents—the Magistrate Judge concluded that the school district violated K.C.'s stay-put rights. Recommended Dec. at 49–55. Specifically, a number of educational benefits he received under the previous placement were not provided by the Amended 2006–07 IEP. See id. at 52. So even though the Magistrate Judge concluded that the Amended 2006–07 IEP itself met the Rowley standard of a free appropriate public education, he recommended that compensatory education be provided for the stay-put violation and that the case be remanded to the Maine Department of Education ("MDOE") to determine what that compensatory education should be. Id. at 55–57.

The school district objects, arguing that regardless of the stay-put violation, the Amended 2006–07 IEP provided a FAPE and thus under the IDEA there was no harm. Def.'s Objection to Recommended Dec., at 10–12 (Docket Item 35). The school district believes that the student is not entitled to any

7

compensatory education for "what amounted to, at most, a purely procedural, technical violation of his stay-put rights." Id. at 7.

Under the IDEA, the court has the power to "grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). "[B]y empowering the court to grant 'appropriate' relief Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case." Burlington, 471 U.S. at 370. "Reimbursement" is not damages, but rather payment of "expenses that [the school] should have paid all along and would have borne in the first instance had it developed a proper IEP." Id. at 370-71. After Burlington, the federal courts began awarding compensatory education as "appropriate relief" for violations of the EHA. See Pihl v. Mass. Dep't of Educ., 9 F.3d 184, 188 (1st Cir. 1993); see also Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 31 (1st Cir. 2006). "[C]ompensatory education is not an automatic entitlement but, rather, a discretionary remedy for nonfeasance or misfeasance in connection with a school system's obligations under the IDEA." C.G. v. Five Town Cmty. Sch. Dist., 513 F.3d 279, 290 (1st Cir. 2008).

Caselaw on remedies for a stay-put violation is scarce.[8] The First Circuit has said that "compensatory education is not an appropriate remedy for a

---

[8] I do not find persuasive either of the cases cited by the school district for the proposition that a stay-put violation alone cannot justify compensatory education. In one case, the statement was dictum, because the court found that the stay-put provision was not violated. Erickson v. Albuquerque Pub. Sch., 199 F.3d 1116, 1122–23 (10th Cir. 1999). In Coale v. State Dep't of Educ., the district court cited Erickson favorably, but the stay-put provision was not at issue in that case. 162 F. Supp. 2d 316, 334–35 (D. Del. 2001). Other courts have expressly found that compensatory education is available for a stay-put violation. See Hale v. Poplar Bluff R-I Sch. Dist., 280 F.3d 831, 834 (8th Cir. 2002) (finding that the award of compensatory education for a stay-put violation was "well within the court's remedial discretion"); Sammons v. Polk County Sch. Bd., 2005 WL 2484640, at *7 (M.D. Fla. Oct. 7, 2005) ("Compensatory education is available as a remedy for a violation of the stay-put provision.").

8

purely procedural violation of the IDEA." Maine Sch. Admin. Dist. No. 35, 321 F.3d at 19. But violation of the stay-put provision is hardly "a purely procedural violation."[9] It goes to the heart of the parents' role in constructing an appropriate IEP. See Honing, 484 U.S. at 324 (Congress "provided for meaningful parental participation, and barred schools, through the stay-put provision, from changing [the student's] placement over the parent's objection until all review proceedings were completed"). Given the unique role of the stay-put provision in the IDEA's framework (including its substantive effect on the student's actual education), it is reasonable to distinguish it from classic procedural protections. The stay-put provision requires the school district to bear the financial cost of the student's current educational placement during the pendency of any proceedings. See Zvi D. v. Ambach, 694 F.2d 904, 906 (2d Cir. 1982) ("[I]mplicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing."). Thus, it is equitable to order the school district to provide compensatory education when it shirks this burden. See Burlington, 471 U.S. at 370-71 (permitting reimbursement of expenses that the school district "should have paid all along"); M.C. v. Cent. Reg'l Sch. Dist., 81 F.3d 389, 395 (3d Cir. 1996) (citing Miener v. Missouri, 800 F.2d 749, 753–54 (8th Cir.

---

[9] Cf. Mackey v. Bd. of Educ., 386 F.3d 158, 160 (2d Cir. 2004) ("A claim for tuition reimbursement pursuant to the stay-put provision is evaluated independently from the evaluation of a claim for tuition reimbursement pursuant to the inadequacy of an IEP. Section 1415(j) represents 'Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are able to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved.'") (quoting Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3d Cir. 1996)) (emphasis in original).

9

1986)).[10]  Indeed, without that sanction, there would be little incentive for a school district to observe the stay-put requirement.[11]

I agree with the Magistrate Judge's recommendation that determination of the proper type and amount of compensatory education should be remanded to the MDOE.

## CONCLUSION

Accordingly, based on 20 U.S.C. § 1415(i)(2)(C), I **GRANT** the request by K.C.'s parents under Count I of their Complaint for compensatory education. The case is hereby **REMANDED** to the Maine Department of Education for assignment back to a hearing officer to determine an appropriate supplemental compensatory-education remedy for violation of the student's rights during the period prior to April 10, 2006 (for the reasons articulated by the Magistrate Judge); and to determine the amount of appropriate compensatory education

---

[10] At oral argument, the school district argued that the award of compensatory education should depend on a finding of malicious intent (or bad faith) on the part of the school district. I find no support for this contention in the statute or caselaw. At least one federal appellate court has specifically rejected the argument that compensatory education requires a finding of "bad faith" on the part of the school district. See Cent. Reg'l Sch. Dist., 81 F.3d at 396.

[11] Alternatively, even if the label "procedural" were attached to the stay-put provision, the 2004 IDEA amendments clarify the standard for finding that certain procedural violations result in deprivation of a FAPE:
> In matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies—
> (I) impeded the child's right to a free appropriate public education;
> (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or
> (III) caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(ii); Winkelman v. Parma City Sch. Dist., No. 05-983, 550 U.S. ___, slip op. at 8 (May 21, 2007). Under this provision, a stay-put violation may readily lead to a finding that a FAPE was not provided because the parents' role in the decisionmaking process was significantly impeded when the school changes the placement without finishing the IEP process or the student was deprived of educational benefits that would have been received under the prior placement.

for the period commencing after April 10, 2006, for denial of the student's stay-put rights.  The decision by the Hearing Officer is otherwise **AFFIRMED**.

**SO ORDERED.**

**DATED THIS 17TH DAY OF MARCH, 2008**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**