UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MR AND MRS C, as parents and | ) | |
| next friends of KC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 6-198-P-H |
| | ) | |
| MSAD 6, | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED RECOMMENDED DECISION ON
MOTION FOR ATTORNEYS' FEES[1]**

Mr. and Mrs. C, as parents and legal guardians of KC, brought this action against Maine

School Administrative District 6 requesting judicial review of an administrative decision issued

by a hearing officer which they claimed incorrectly limited the relief awarded to KC for the

violation of his rights under the IDEA through April 10, 2006, and incorrectly endorsed as

appropriate an amended IEP and placement offered to KC for the period after April 10, 2006,

and for the 2006-2007 school year.  This Court agreed with the parents that the limited relief

awarded by the hearing officer for the "stay-put" violation was insufficient, but disagreed with

them regarding the sufficiency of the amended IEP.   The parents request $ 75,931.76 for the

services of two separate attorneys who represented them in this case, claiming they are

"prevailing parties" within the meaning of the IDEA.  Having reviewed the parties' submissions,

I now recommend that the court award $ 33,871.75 in attorneys' fees, which represents

---

[1]     A  motion for attorneys' fees is referred to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter pursuant to the provisions of Rule 54(d)(2)(D) of the Federal Rules of Civil Procedure.  This Amended Recommended  Decision simply corrects a mathematical error that arose because I incorporated O'Meara's $ 1,058.26 bill of costs into the attorneys' fee calculation.  There has been no objection filed to the Bill of Costs, per se, and I have not offered this recommended decision to address that issue, as the clerk will assess the costs in the ordinary course and allow those costs normally allowed.

$ 21,536.75 for fees incurred for Richard L. O'Meara's services and $ 12,335.00 for fees incurred for the services of Diane Smith of the Disability Rights Center.

## Discussion

The IDEA permits courts to order reasonable attorneys' fees for the "prevailing party" in a dispute under the statute.  See 20 U.S.C. § 1415(i)(3)(B)(i)(I).  According to First Circuit precedent, in order to be a "prevailing party" in IDEA litigation, there must be a "material alteration of the legal relationship of the parties," and there must be a "judicial imprimatur on the change."  Smith v. Fitchburg Pub. Schs., 401 F.3d 16, 22 (1st Cir. 2005) (quoting Buckhannon Bd.& Care Home Inc. v. W. Va. Dep't of Health and Human Resources, 532 U.S. 598, 604-05, (2001)).

> Ordinarily, the trial court's starting point in fee-shifting cases is to calculate a lodestar; that is, to determine the base amount of the fee to which the prevailing party is entitled by multiplying the number of hours productively expended by counsel times a reasonable hourly rate.  See Hensley v. Eckerhart, 461 U.S. 424, 433, (1983).  Typically, a court proceeds to compute the lodestar amount by ascertaining the time counsel actually spent on the case "and then subtracting from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary."  Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984).  The court then applies hourly rates to the constituent tasks, taking into account the "prevailing rates in the community for comparably qualified attorneys."  United States v. Metro. Dist. Comm'n, 847 F.2d 12, 19 (1st Cir. 1988); see also Grendel's Den, 749 F.2d at 955.  Once established, the lodestar represents a presumptively reasonable fee, although it is subject to upward or downward adjustment in certain circumstances.  See Blum v. Stenson, 465 U.S. 886, 897 (1984).

Lipsett v.  Blanco, 975 F.2d 934, 937 (1st Cir. 1992).  The plaintiffs bear the burden of establishing the reasonableness of the rates and hours submitted in their motion for fees.

Chaloult v. Interstate Brands Corp., 296 F. Supp. 2d 2, 4 (D. Me. 2004).  In a case such as this one where the plaintiffs obtained only partial success on their complaint, the court must undertake a further task before arriving at the ultimate fee award.  "The figure derived from the

lodestar calculation may be adjusted up or down to reflect [their] degree of success in the litigation." Chaloult, 296 F. Supp. 2d at 4.

### A.  The Lodestar calculation

According to the billing records submitted by plaintiffs' attorneys, Attorney O'Meara's office spent 220.2 hours on this case billed at a reasonable hourly rate of $ 225.00 per hour for his services and  $140.00 per hour for an associate's time.  Attorney Smith, who began her representation after the commencement of this lawsuit, claims 145.45 hours at $ 200.00 per hour. The District first challenges Attorney Smith's hourly rate of $ 200.00, claiming it is excessive given Attorney Smith's experience and/or skill and the fact that prevailing hourly rates in central and northern Maine communities are generally lower than the prevailing rates in southern Maine. The District also notes that O'Meara has over 20 years experience representing families in special education disputes while Smith's affidavit indicates she has worked three years as a staff attorney at the Disability Rights Center.  In her reply memorandum Smith clarifies her legal experience, including her work for the national office for the Protection and Advocacy System in Washington, D.C. in the area of special education.  She also explains the statewide nature of her work with Maine's sole Disability Rights Center and that, as indicated in the affidavit, she has relevant legal experience dating back to 1994 when she was first admitted to the State Bar of Michigan.  The hourly rates for both of plaintiffs' attorneys are reasonable ones given the prevailing hourly rates in the State of Maine and they should not be modified.

The District also challenges certain of the hours billed by O'Meara.  In Fenneman v. Town of Gorham, 802 F. Supp. 542 (D. Me. 1992), this Court made clear that time spent preparing for and attending special education IEP team meetings is not recoverable in attorneys' fee litigation – even when the family and their counsel see it as an "important stage" in preparing

for IDEA litigation.  See id. at 545-46.  Since that ruling, the IDEA has been amended to codify this concept.  Thus, the IDEA now states:  "Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e)."  20 U.S.C. § 1415(i)(3)(D)(ii).  The District suggests $ 1957.50 of O'Meara's time was spent advising the family on the PET process prior to the hearing request and that this amount is not recoverable.  The parents have not disputed this statement and, accordingly, I will deduct that amount from O'Meara's allowable fees.  The District also argues that the court should exclude a duplicative entry on February 27, 2006, for $ 280.00 for a junior associate's attendance at a meeting with the client led by Attorney O'Meara.  I agree with the District that the junior associate's fee represents a duplicative billing and I will deduct that amount from O'Meara's fee. The District also disputes another $ 2028.50 in O'Meara's fees.  These are fees incurred after the hearing officer's decision and prior to drafting the complaint and then fees incurred after Attorney Smith entered her appearance.  The District complains about the billings between the hearing officer's decision and the filing of the complaint in this Court; these are the entries between August 22, 2006, and November 10, 2006, and they amount to $ 450.00 of the $ 2028.50 of allegedly excessive fees.  During this time period the parents were reviewing the hearing officer's decision, considering their legal options, and attempting to reach some sort of agreement with the District.  I find these entries to be appropriately included within the lodestar calculation.  Attorney Smith entered her appearance in this litigation on January 16, 2007. Between December 2006 and January 18, 2007, O'Meara billed for three meetings with Smith for a total of $ 382.50.  Smith defends O'Meara's bill on the basis that his presentation of the case history and background materials saved her time in being brought up to speed on the litigation.  I

find this to be reasonable and will allow this amount.  Between July 10, 2007, and April 11, 2008, O'Meara billed another $ 1237.50 in fees.  No one is disputing the entry for April 11, 2008, for $ 225.00 for file review and preparation of the materials for the fee reimbursement claim.  The District does object to the $ 1012.50 billed for reviewing Attorney Smith's memoranda, giving her advice about procedural issues in federal court, and reviewing the decisions of the Magistrate Judge and the District Court Judge.  As to these items, I agree with the District and do not believe the time spent in this fashion is properly recoverable, especially since Attorney Smith has billed generously for the time she spent drafting and reviewing these documents.  I will therefore deduct from O'Meara's $ 46,323.50 bill the following amounts:  $ 1957.50 for pre-administrative hearing consultations, $ 280.00 for the junior associate, and $ 1012.50 for the July-March consultations with Attorney Smith.   The lodestar figure for Attorney O'Meara is $ 43,073.50.

Attorney Smith claims a lodestar figure of $ 28,550 based upon 145.45 hours of time spent on the case.  The District maintains that the time spent on this appeal is excessive by any reasonable measure and that Attorney Smith's vague time entries make accountability difficult for the court to measure.  For instance, in making my own assessment of the billing entries I note that following the Magistrate Judge's recommended decision, Attorney Smith billed for 6.5 hours of legal research on the "Rowley" issue.  That is, indeed, an exceedingly vague entry.  While drafting her reply brief prior to Magistrate Judge Cohen's decision, her billing records already included another 9 hours of legal research/drafting in connection with the "Rowley" issue.  It is hard to understand why someone with close to fourteen years experience in special education law would spend 15.5 hours researching Board of Education v. Rowley, 458 U.S. 176, 188-189 (1982), apparently in the context of the 1997 and 2004 amendments to the IDEA.   For litigators

who practice in this area of the law, it can hardly be a novel idea that the FAPE standard, following the 1997 and then the 2004 amendments, could arguably be set at a higher bar than the "some educational benefit" standard embraced by the First Circuit in <u>Lenn v. Portland Sch. Comm.</u>, 998 F.2d 1083, 1086 (1st Cir. 1993).  The District also asks that when assessing whether or not these billing entries represent an unreasonable number of hours, the court consider that Attorney O'Meara billed a total of 220.2 hours in the context of a seven-day hearing coupled with the submission of a lengthy post-hearing memorandum and the drafting of the complaint initiating this appeal.  According to the District, the time billed by Attorney Smith is roughly two-thirds of the amount of time billed by Attorney O'Meara for the underlying hearing, which seems excessive when comparing the nature, complexity, and duration of the tasks associated with each phase of the litigation.  The District suggests that I make an appropriate reduction of 30 percent in the total number of hours billed by Attorney Smith, resulting in a reasonable hourly total of 100 hours.  I do find that the number of hours billed are excessive and that some of the entries are quite vague, accompanied by large blocks of time such as eight or nine hours not associated with any preparation or attendance at a hearing.  However, I do not believe an across the board 30 percent reduction is warranted.  I acknowledge that the precise amount of the deduction involves more art than science, but I conclude that a reduction of 20 hours in warranted, which amounts to approximately a 14 percent reduction.  This would result in 3 hours of travel time billed at $ 60.00 per hour as in the original petition and 122.45 hours billed at $ 200.00 per hour for a total lodestar figure for Attorney Smith of $ 24,670.00, roughly $ 4,000.00 less than requested.

**B.  Deduction for non-prevailing party issues**

My calculations leave a total lodestar calculation of $ 67,743.50 for both attorneys' fees. The District argues that the plaintiffs should receive only 10 to 20 percent of the lodestar amount, meaning that they would be entitled to somewhere between $ 7,000.00 and $ 14,000.00 in attorneys' fees.  The District takes this position because, in its view, the only issue on which the plaintiffs even arguably prevailed was the compensatory education issue and that issue was considerably less important than the programming and placement issues connected with the 2006-2007 IEP.  The District also notes that the court does not really even know the true degree of the parents' success at this juncture because the matter was remanded for further findings on the issue of compensatory education.[2]  The parents posit that, if there is any reduction at all for their lack of success on every issue, the appropriate reduction would be in the range of 10-25 percent.

The wide disparity between the parties' positions is accounted for by the "spin" each side places on the hearing officer's and the Court's decisions.  According to the District, the hearing officer ruled in its favor on the three issues that were before her.  First, she upheld the appropriateness of the 2006-2007 IEP as implemented, starting in April 2006, and further found that the IEP was reasonably calculated to provide the minor child with a FAPE for the upcoming 2006-2007 school year.  Second, she declined to order an out-of-district placement as requested by the family and third, she ordered compensatory education in an amount equal to what the District had already offered.  The appeal to this Court sought to reverse the hearing officer's decision on all three issues, and ultimately the hearing officer's decision was overturned on the

---

[2]         To some extent I agree with the District on this question.   The remand hearing is to be conducted in mid-June and, if the parties are able to argue more cogently about the degree of success on remand after they have a decision, they can raise those issues in any objection to this recommended decision.  I can only make my decision based upon what is before me now.

issue relating to compensatory education.  The Court remanded the matter to the hearing officer for further findings rather than adopting the parents' request of one year of additional special education services.  Thus, the District characterizes the parents' "success" as limited to one small portion of one of the three issues in the case, far less than even a one-third total victory.

Needless to say, the parents' "spin" an entirely different outcome.  They say five separate legal issues were raised and decided at the hearing level:  (1) that the District violated the IDEA between February 1 to February 21, 2006, because it failed to provide the least restrictive environment for KC during that time period;  (2) that the District violated the "stay put" provisions of the IDEA by not implementing the February 2005 IEP since the time of the parents' complaint, February 21, 2006, through April 10, 2006;  (3) that KC was entitled to the remedy of compensatory education consisting of 10 weeks of STRIVE camp;  (4) that the 2006-2007 IEP with placement in the Therapeutic Life Skills program at Bonny Eagle High School was reasonably calculated to provide a FAPE;  and (5) that the PET should convene to consider some minor modifications for the child's January 2006 IEP as recommended by the hearing officer.  According to the parents, they prevailed on three, and arguably on four, of the issues before the hearing officer.  They argue that this Court's decision yielded a similar victory.  Although the parents concede that they lost the issues related to program and placement as they pertain to the 2006-2007 IEP, they argue they prevailed on two other issues.  The Magistrate Judge found that after April 10, 2006, the District remained in violation of certain "stay put" rights and the grant of ten weeks of STRIVE camp was insufficient to remedy the educational injury suffered.  Thus, the parents say they prevailed on two out of the three issues brought before this court.  They also suggest that the predominant reason for their appeal was to obtain services in the community for KC until he ages out of IDEA eligibility in June 2009, and that the return to Bonny Eagle for

placement purposes has diminished in importance since KC has been out of school for over two years in any event.  Thus, compensatory education services have become the driving force behind this litigation.  Of course, as I indicated in footnote 2, above, we do not yet know the degree of success on this point, but we do know the parents achieved an order of remand on the issue.

It seems to me that the District's analysis of the degree of success herein ignores ¶ 11 of Magistrate Judge Cohen's recommended decision (Doc. No. 32) wherein he identifies the three issues arising in this appeal and concludes that the parents' appeal should be granted as to two of those three issues.  However, it also seems to me that the parents are engaged in a counting exercise trying to increase the raw number of issues upon which they can say they prevailed while ignoring the substance of what either the hearing officer or the magistrate judge had to say about the situation.  For instance, Magistrate Judge Cohen noted that the so-called "Geren plan," the post April 10 plan for KC's placement and program, though differing from the last-agreed-upon IEP, "did not effectuate changes quite as sweeping as the [p]arents claim."  (Rec. Dec. at 51, ¶ 33.)  Thus the "stay-put" violation, as found by the Magistrate Judge, was less than sweeping.  This issue overlaps the related decision as to whether compensatory educational services should be ordered for a violation of the "stay put" provision when the substituted placement has been found to be sufficient under IDEA,  although not identical to the prior IEP.  On this issue the United States District Court Judge's Memorandum of Decision and Order Adopting the Recommended Decision makes it clear that the parents won a resounding victory, noting that a violation of the "stay put" provision is more than a "purely procedural violation of the IDEA."  (Mem. Dec. at 9, Doc. No. 43.)  Of course, what practical benefit they may take from that endorsement of their legal position remains the great unknown at this point in time.

Although the parents are now dismissive of the hearing officer's and the Court's findings relating to the sufficiency of the 2006-2007 IEP that the District struggled to put in place, I cannot dismiss that issue from the case as no longer being relevant.   When the hearing was held and the appeal filed, the sufficiency of the 2006-2007 IEP was a major issue.  The parents may, quite naturally, now see the compensatory education services component as 80 percent of the case.  After all, they won vindication on that portion of the case.  I think it is fairer to view this case as a 50/50 proposition.  Half of the case dealt with issues related to the sufficiency of the post April 2006 and the 2006-2007 IEP and half of the case dealt with issues related to the compensatory educational services for the violation of the stay put provision.  Both parties prevailed on some points related to each of the major issues, but clearly the District won on the issue of the sufficiency of the new IEP, even though the hearing officer may have ordered minor modifications, and the parents won on the issue of compensatory educational services for the stay put violation, even though the stay put violation may not have been "sweeping" and even though the full extent of the benefit achieved is still unknown.  I would award the parents, as the prevailing party on the issue of the compensatory educational services for the stay put violation, one-half of the lodestar attorneys' fee calculations, resulting in an attorneys' fee award of $ 33,871.75 with costs to be determined by the clerk.

## Conclusion

Based upon the foregoing I recommend the court award attorneys' fees in the amount of $ 33,871.75, along with those costs allowed by the clerk in the ordinary course of the proceedings.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 25, 2008

11